### ELI SIMONDS *vs.* CYRUS P. SIMONDS.

A testator devised one undivided half of his farm to trustees, for the support of his son A., and also directed that a certain part of his dwellinghouse should be kept solely for A.'s use and benefit. He devised the other undivided half of his farm to B. on the following conditions : That B. should carry on the whole farm at the halves, and pay half the yearly income thereof to the trustees or guardian of A. for A's sole use ; and should furnish A. with fuel, and also with a horse and chaise as often as A's trustees or guardian should think proper, and also attend to his person and apartments ; and should, if A's trustees or guardian should deem it advisable to remove him from said house and board him elsewhere, pay one half the income of the whole farm to A's trustees or guardians, for A's sole use and benefit. *Held,* that the devise to B. did not restrain him from alienating, during the life of A., the estate so devised to him; that all said conditions might be performed by B's alienee; and that B. could give a good and perfect title to said estate, by conveying the same subject to said conditions.

BILL in equity for the specific performance of an agreement.

The bill set forth the following clause in the will of Jonathan Simonds, deceased : "I give unto my son George W. Simonds, my nephews Franklin Simonds and Jonathan T. Simonds, and to the survivor of them, and his heirs, one undivided half of my farm in Lexington : nevertheless to hold in trust for the following purposes ; that is to say, to apply the income of the same to the support of my son Albert, in addition to what I have already given. And my will is, that the east end of the old house on my farm, with the cellar under the same, divided by the middle of the entry, with the garden and the well at the east end of the house, with the east end of the front yard, beginning at the centre of the front door, and the small barn at the corner of the lane back of the house, shall be kept solely for his use and benefit, after the same are put in complete repair out of any of the proceeds or income of my real estate or personal property, and after my debts are paid : But *if* it is thought advisable to take down the old house and build a new one, instead of repairing it, my will is, that he shall have one full half of the house, when rebuilt, with half of the cellar and the front yard, together with said garden, well and barn. My desire is, that the trustees should cause the house to be re

built as soon as my son George W. Simonds arrives at the age of twenty-one years ; and they are hereby authorized to appropriate, for this purpose, any portion of the income given them in trust ; but my intention is to see the same done in my lifetime, if my life is spared. The other undivided half of my farm in Lexington I give to Eli Simonds, son of my brother William Simonds, and to his heirs, on the following conditions : That he carry on the whole farm, in a husbandlike manner, at the halves, and after payment of all taxes, one half of the annual income of the said farm to be paid over to the trustees or guardian of my son Albert, for his sole use and benefit ; and that he, the said Eli Simonds always furnish him with a suf ficient quantity of fuel ready for use, at the door of said house, and find a horse for the use of said Albert, as often as his trustees or guardian may think best ; and if his guardian or trustees shall think proper, on further condition that the said Eli shall provide a horse and chaise, or pleasure wagon or carryall, with a suitable driver, for the convenience of said Albert to go to meeti ; every Sunday, if he chooses, and the weather permitting, and to ride, in the course of the week, among his relations, connexions and friends, as often as his guardian or trustees may think most prudent : On further condition, that said Eli keep that part of said house, occupied by said Albert, in a clean condition, make his bed, and do all his washing. And should it be considered advisable by the guardian or trustees, or their successors, to remove said Albert from the house, and board him elsewhere than on the farm, then my will is, that three disinterested neighbors shall appraise, as often as once in three years, what the income of said farm shall be annually worth ; the appraisers to be mutually chosen by the parties in interest. Then upon this further condition, that one half of the amount, which the said appraisers shall award, shall be paid over annually, free of taxes, by the said Eli or his heirs, to the guardian or trustees of the said Albert, for his sole use and benefit. But should the said Eli Simonds be not alive at the probate of this my will, or not having arrived at the age of twenty-one years, then my will is, that the trustees, or a

majority of them, take charge of this property until he, the said Eli, does arrive at the age of twenty-one years, when he shall elect to take said farm on the conditions aforesaid, or refuse it : And in case said Eli dies before he arrives at the age of twenty-one years, then I do hereby devise that part of the farm, intended for the said Eli, unto Cyrus Simonds, son of my brother William, and to the heirs of said Cyrus, under the same regulations, restrictions, and upon the same conditions, as are pointed out in respect of said Eli ; and no part of the income of said farm is to go to either said Eli or said Cyrus, until after he arrives at twenty-one years, or until after the probate of my will ; and upon his election to take the farm on the conditions aforesaid."

The bill then alleged the death of said Jonathan Simonds, the testator, the probate of his said will in February 1835, the coming of said Eli Simonds, the plaintiff, to the age of twenty-one years, on the 4th of March 1838, and his election, on that day, to accept the aforesaid devise on the conditions thereto annexed, his entry on said devised estate, and his performance of said conditions hitherto.

It was further alleged in the bill, that said Albert Simonds had never resided on said farm ; that he had become dangerous to be at large, and was confined in the State Lunatic Hospital, by order of the judge of probate for the county of Middlesex.

The bill finally set forth, that on the 17th of February 1842, the plaintiff and defendant signed the following " memorandum of an agreement. First, that the said Eli Simonds hath this day sold one half of the farm formerly of Jonathan Simonds in Lexington, the whole containing 125 acres, for $ 500, subject to the payment of $ 50 a year to the widow ; being the same half that was devised to said Eli by said Jonathan, upon the conditions contained in his will : The estate to be conveyed by a warranty deed, and a good and perfect title to which half of said farm is to be given to said Cyrus, free from all incumbrances except the payment to the widow and the performance of the conditions of said will during the life of Albert, the son of said Jonathan, by the deed of said Eli, to be delivered in

seven days from this date. And the said Cyrus agrees to pay said amount on the tender or the delivery of the deed making such title."

The bill alleged that the plaintiff, on the 23d of February 1842, made a good and perfect title unto the defendant and his heirs to half of said farm, by a conveyance by a deed of warranty, &c. according to the aforesaid agreement, and offered to deliver said deed to the defendant on being paid the purchase money ; but that the defendant refused to perform his part of said agreement.

The defendant, in his answer, admitted the allegations in the bill, and averred that he had ever been ready to fulfil his part of the agreement therein mentioned, if the plaintiff was able to give "a good and perfect title" to half of said farm, according to said agreement ; but that he was advised that it is "a question of much uncertainty in law, whether the plaintiff can convey said estate, and give a good and perfect title thereto, subject to the performance of the conditions in said devise contained, during the ife of said Albert ; and whether the plaintiff was not selected by the testator to be devisee of said estate on said conditions, for the especial and peculiar confidence which the testator had in his ability, disposition," &c. Wherefore the defendant submitted to the court whether he ought to be compelled to perform his said agreement.

*Aylwin,* for the plaintiff.

*Paine,* for the defendant.

WILDE, J. This is a bill by which the plaintiff seeks to enforce the specific performance of a written contract, by which the defendant agreed with the plaintiff to purchase of him an undivided moiety of a farm in Lexington, in the county of Middlesex, at a price agreed. By the agreement, the plaintiff was to convey the estate by a warranty deed, and to give to the defendant a good and perfect title to the same, with certain exceptions not now in controversy. The defendant, in his answer, admits the contract as set out in the bill, and avers that he has ever been ready to perform the same, on his part, if the plaintiff were able to give such a good and perfect title as he had agreed to give

so that the only question raised by the bill and answer is, whether the plaintiff's title be valid, so as to enable him to convey to the defendant such a title as he had, by his agreement, stipulated to convey.

The plaintiff's title is derived from Jonathan Simonds, under his last will and testament, by which he devised an undivided moiety of the farm in Lexington to trustees, the income of which, with the income of other property devised to the same trustees, was to be applied by them to the support of his son Albert, during his natural life. And the other moiety he devised to the plaintiff, his nephew, in fee, on condition that he should carry on the whole farm at the halves, in a husbandlike manner, and pay over one half of the annual income to the trustees or to the guardian of the said Albert, for his sole use and benefit. The case turns on the construction of this condition.

The defendant's counsel contends that the language of the condition manifests an intention to restrain the alienation of the plaintiff's moiety of the farm during the life of the testator's son Albert ; that such a partial restraint on alienation would be good in law ; and that such a condition need not be expressly declared, but if it was intended as such by the testator, it would bind the estate. This is undoubtedly true. For although a general restraint on alienation by a tenant in fee is void, as being repugnant to the nature of the estate, and inconsistent with the essential enjoyment and beneficial use of property ; yet a partial restraint on alienation, for a limited time, may be valid. So the intention of the testator must govern ; and if it clearly appears that he intended to impose such a condition, as the defendant's counsel contends for, the intention must prevail, although not declared in express words. But in giving a construction to this will, as to the matter in controversy, we must bear in mind that all conditions, which may defeat or work a forfeiture of an estate, are to be strictly construed, and that such conditions are not readily to be raised by inference and argument.

Now on examination of this will, we have been unable to discover any intention of the testator to impose any restraint of the plaintiff's right of alienation of the estate devised. All the con

ditions imposed may be performed, and well performed, by the plaintiff, by substitution ; and some of the services required certainly were not expected to be performed by the plaintiff in person.    The plaintiff was to carry on the farm in a husbandlike manner ; but this surely might be done by a tenant.    So the plaintiff was required to furnish Albert with a horse and chaise, or a carryall, with a suitable driver, to go to meeting, and to visit his relations, connexions and friends, as often as his guardian or trustees should think most prudent.    All the plaintiff was required to do, was to furnish a horse and chaise and a suitable driver, under the direction of the trustees or guardian.    So the plaintiff was required to keep that part of the house occupied by Albert, so long as he should occupy it, in a clean condition, to make his bed, and do all his washing.    These and other parts of the will, do not indicate any intention of the testator to require the plaintiff personally to perform the condition.    The *performance* of the condition, it seems, was all the testator intended to exact, and not that it should be performed by the plaintiff in person.

But it has been argued by the defendant's counsel, that the testator expected that Albert and the plaintiff would live together in the same house, and that the personal attendance and attentions of the plaintiff, to administer to Albert's comfort, were expected and required, so that he might not be exposed to suffering and annoyance from the neglect or ill treatment of strangers. We think, however, that no such inference can be made, with any certainty, from the language of the will.    For the testator makes provision for Albert's boarding elsewhere than on the farm, whenever the trustees or guardian should consider it advisable for him so to do.    And in fact the said Albert never has resided on said farm ; but, having become dangerous to be at large, he has been ordered to be removed, and is now confined in the State Lunatic Hospital at Worcester, by the order of the judge of probate for the county of Middlesex.

And besides ; the testator evidently intended that the trustees or the guardian of his unfortunate son should have the care and control of his person, and decide where and with whom he was

to live.   One of the trustees was Albert's brother, and would have the strongest inducement to see to it that he should be placed in a situation where he would not be exposed to ill usage or neglect.   It was the duty of the trustees or guardian to do this, and it was not confided to the plaintiff.   He was to pay over to them half of the income of the farm ; but in no part of the will is it intimated that he should direct the expenditure. We are, for these reasons, of opinion, that the plaintiff was not bound, according to the true meaning and construction of the will, to perform the conditions of the devise in person, and con sequently that he has a legal right to convey the estate in ques- tion to the defendant, and that thereby a good title will vest in him, subject to the conditions, according to the contract.

*Decree for specific performance.*